NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LG ELECTRONICS USA, INC., : | |
| : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | Civ. No. 9-CV-5178 (DMC) (JAD) |
| SEAMLESS INTERACTIVE, LLC, : | |
| : | |
| Defendant. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion of Defendant Seamless Interactive, LLC ("Defendant" or "Seamless") to dismiss the Complaint of Plaintiff LG Electronics USA, Inc. ("Plaintiff" or "LG"). Seamless moves to dismiss based on lack of personal jurisdiction.

Pursuant to FED. R. CIV. P. 78, no oral argument was heard. For the reasons stated Seamless's motion to dismiss will be **denied without prejudice**, and limited jurisdictional discovery will be permitted.

I. BACKGROUND

A. PROCEDURAL POSTURE

The current status of this matter was previously summarized by the Honorable Gregory K. Frizzell, U.S.D.J., of the Northern District of Oklahoma, in a related case:

> This lawsuit arises from a dispute over ownership of technology for the transmission and broadcasting of mass viewing video presentations over the internet. [Seamless] claims it developed, marketed and sold the technology under the name "IP-Cast," for which it holds a registered trademark issued March 17, 2009. [LG] contend they have marketed high quality network cards under the trademark "IP-Cast" throughout the

>United States since at least September 2007, and [Seamless], in obtaining the registered trademark and marketing its technology, has violated their right to the trade name.
>
>>On September 15, 2009, [Seamless] filed a petition in Tulsa County District Court alleging claims against defendants for violation of 15 U.S.C. §1125(a) of the Lanham Act, §15 U.S.C. §1114 of the Lanham Act and 78 O.S. §53(A)(3) of the Oklahoma Deceptive Trade Practices Act. [Seamless] asserted therein that it is a California limited liability company with its principal place of business in Los Angeles, defendant LG Electronics, Inc. is a Korean corporation doing business in and advertising and selling products into Oklahoma, and defendant LG Electronics USA, Inc., is a corporation regularly doing business in and selling products into Oklahoma. On October 14, 2009, defendants [LG] removed the case to [the federal district court in the Northern District of Oklahoma].  In the meantime, on October 9, 2009, [LG] filed suit in the United States District Court for the District of New Jersey, seeking injunctive relief and damages against Seamless for trademark infringement, unauthorized use and unfair competition under New Jersey law, and unfair competition under federal law. [LG] also sought declaratory judgment of noninfringement and cancellation of Seamless's federal trademark registration.

<u>Seamless Interactive, LLC v. LG Elecs. USA, Inc.</u>, 2009 U.S. Dist. LEXIS 107562, at *1-4 (N.D. Okla., November 18, 2009).   In short, Seamless filed suit in Oklahoma, and LG subsequently filed the instant suit in the United States District Court for the District of New Jersey.

On December 4, 2009, Seamless filed a motion to dismiss this action, asserting that the Court lacks personal jurisdiction over Seamless.  On December 18, 2009, LG submitted a brief in opposition.

The previously-filed case in Oklahoma was stayed pending the outcome of this Court's decision on Seamless's motion to dismiss for lack of personal jurisdiction.  See <u>Seamless</u>, 2009 U.S. Dist. LEXIS 107562, at *12-13 ("The decision about whether to transfer the case to the United States District Court for the District of New Jersey or to the United States District Court for the Central District of California will be held in abeyance pending a determination by the New Jersey court of whether it has personal jurisdiction over plaintiff, Seamless Interactive, LLC.").  Presumably, if this

Court finds that personal jurisdiction over Seamless is improper, the Oklahoma Court will transfer the case to California; if this Court finds that it may properly exercise personal jurisdiction over Seamless, the Oklahoma Court would then determine whether the suit pending before that Court should be transferred to New Jersey or to the Central District of California.

This Court notes that where there are two complaints that substantially overlap with each other, and the complaints are filed in different district courts, proper practice is typically to dismiss, stay or transfer the later-filed case. EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) ("[I]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it."); see Intervet, Inc. v. Merial Ltd., 655 F. Supp. 2d 131, 133 (D.D.C. 2009) (noting that under the first-to-file rule, "when two actions involving the same subject matter are pending, the first-filed action should proceed to the exclusion of the later-filed action.") (citation omitted).[1]  Here, however, this Court will assess whether personal jurisdiction over Seamless can be maintained in New Jersey, as our colleague in Oklahoma has requested that we do so prior to his ruling on the transfer motion pending before that Court.

**B. FACTS**

Seamless is incorporated in California, with a principal place of business in California. Def. Br. ¶¶ 5-6. Seamless has no offices or employees in the State of New Jersey, and does not own, lease or use any property in the State of New Jersey. Id. ¶ 6. Seamless asserts that it has not specifically targeted New Jersey with marketing or advertising materials, or engaged in communications with individuals located in New Jersey. Id. Seamless asserts that it will be relocating to Oklahoma,

---

[1] Although the issue has not been formally briefed or raised with this Court, the first-to-file rule may be applicable to this matter.

which is the reason that it brought its action in Oklahoma in the first instance.

LG is a Delaware corporation that has its principal place of business in Englewood Cliffs, New Jersey.

Additional facts necessary to the disposition of this motion are provided below in the Court's discussion of personal jurisdiction.

## II. APPLICABLE LAW

Pursuant to FED. R. CIV. P. 4(e), a district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits. See FED. R. CIV. P. 4(e). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Id. (citing N.J. Ct. R. 4:4-4(c)).

Pursuant to FED. R. CIV. P. 12(b)(2), a plaintiff must demonstrate by a preponderance of the evidence facts sufficient to support the assertion of personal jurisdiction over a defendant. Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 632 (D.N.J. 2004) (citing Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992)). "A court must accept as true the allegations in the complaint and resolve disputed issues of fact in favor of the plaintiff." Id. (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d 1984)). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." Id. (citing Mellon Bank (East) PFSF, Nat'l Assoc. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).

"A court can assert either specific or general jurisdiction over a defendant. Specific

jurisdiction requires the defendant to have minimum contacts with the forum state." Ameripay, 334 F. Supp. 2d at 633 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).  With respect to an assertion of specific jurisdiction, "the lawsuit must 'arise out of' or 'relate to' these minimum contacts.  Furthermore, a party must have purposefully availed itself of the forum such that it 'should reasonably anticipate being haled into court' there, having invoked the benefits and protections of the forum's laws." Id.  "General jurisdiction, by contrast, requires the defendant to have 'continuous and systematic' contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).  "These contacts need not relate to the subject matter of the litigation." Id. (citing Helicopteros, 466 U.S. at 415 n.9).  "However, general jurisdiction requires 'a very high threshold of business activity.'" Id. (citing Compagnie des Bauxites de Guinea v. Ins. Co. of N. America, 651 F.2d 877, 891 n.2 (3d Cir. 1981) (finding that a "daily presence" in the forum and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold)).

Courts have developed a jurisprudence to determine whether personal jurisdiction can be maintained based upon a party's contact with a jurisdiction through internet-based contacts (e.g., through a website).  Under certain circumstances, "[a] website operated by the defendant may provide contacts sufficient to support jurisdiction." Ameripay, 334 F. Supp. 2d at 634 (citing Toys "R" Us, Inc. v. Step Two, S.A, 318 F.3d 446, 452 (3d Cir. 2003)).  To determine if a website provides a basis for jurisdiction, courts must assess "the nature and quality of commercial activity that the defendant conducts over the Internet." Spuglio v. Cabaret Lounge, 344 Fed. App'x 724, 725 (3d Cir. 2009) (internal quotation marks and citations omitted).  The Third Circuit has instructed

district courts to determine where the website's commercial activity falls on the sliding scale, as set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). See Section III.D, below.

### III.  DISCUSSION

LG asserts that this Court has both specific and general personal jurisdiction over Seamless. LG asserts that specific jurisdiction exists because Seamless:  **(A)** misappropriated the intellectual property of a New Jersey Corporation, thus causing harm within the State; **(B)** "directed threatening communications into New Jersey"; **(C)** "advertises product demonstrations from within New Jersey"; and **(D)** uses its website to offer its products "to iPhone users in New Jersey and benefits from the market established by the law of the State of New Jersey."  Seamless responds that such contacts do not establish either specific or general personal jurisdiction.

#### A.  HARM FELT WITHIN NEW JERSEY

LG asserts that Seamless, a California company, misappropriated the intellectual property of a New Jersey Corporation by registering the  "IP-Cast" mark.  As the harm from any such misappropriation would be felt in New Jersey, LG argues that Seamless is susceptible to suit in New Jersey under Calder v. Jones, 465 U.S. 783 (1984).[2]  The Court does not agree with LG.

In Calder,  the Supreme Court held that personal jurisdiction could, in some cases, be proper over a nonresident defendant if the defendant "committed an intentional tort outside the forum, the unique effects of which caused damages to the plaintiff within the forum." Id.  To establish personal

---

[2] Plaintiff does not explicitly ask this Court to apply the Calder effects test.  Plaintiff does, however, cite to the case in its discussion of whether Defendant "purposefully directed [its] activities" at New Jersey, allegedly causing harm in the forum.  Pl. Br. at 9.

jurisdiction under Calder:

> First, defendant must have committed an intentional tort. Second, plaintiff must have felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff. Third, defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Voltaix, LLC v. NanoVoltaix, Inc, 2009 U.S. Dist. LEXIS 91380, at *7 (D.N.J. Oct. 1, 2009) (citing IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)).[3]

Here, LG has failed to meet the third prong of the Calder test because Seamless's conduct was not expressly aimed at New Jersey. See id. at 8-10. As such, this Court cannot find specific jurisdiction pursuant to the Calder "effects test."

The mere fact that Seamless knows LG was located in New Jersey—and, therefore, would obviously suffer harm from misuse of its intellectual property (i.e., the IP-Cast mark) in New Jersey—does not suffice to establish personal jurisdiction in the State. See Voltaix, 2009 U.S. Dist. LEXIS 91380, at *10-11 (D.N.J. Oct. 1, 2009). In fact, the Court in Voltaix expressly rejected the plaintiff's argument that "[Defendant's] knowledge of [Plaintiff]'s trademark and presence in New Jersey means that [Defendant's] decision to take on the name and mark NanoVoltaix was expressly aimed at New Jersey." See id. The Court acknowledged that "[Defendant] NanoVoltaix may have been aware of Plaintiff's presence in New Jersey and that the brunt of the harm of any intentional trademark infringement would be felt in New Jersey." Id. Nonetheless, it explained, "these facts on their own [do not establish] the 'deliberate targeting' of the forum state required for the exercise of personal jurisdiction." Id.; see Ameripay, 334 F. Supp. 2d at 625 (determining that "[a]lthough

---

[3] "For purposes of jurisdictional analysis, claims of trademark infringement may be treated as an intentional tort." Voltaix, 2009 U.S. Dist. LEXIS 91380, at *7 n.2; see Budget Blinds, Inc. v. White, 536 F.3d at 263-65; IMO, 155 F.3d at 264.

Defendant's website may infringe on Plaintiff's trademark in New Jersey, Plaintiff has failed to show Defendant's purposeful availment of the forum"; noting that Defendant was a "company with 96% of its clients in Illinois and no clients in New Jersey"). As the Voltaix Court explained, "while [Defendant] does operate a website which is available for viewing by New Jersey residents, it has not been alleged that [Defendant] expressly aimed the website at New Jersey residents or has targeted its use of the [trademark in dispute] towards New Jersey residents as compared to residents of other states." Id. Here, the fact that LG would suffer harm (if any) from Seamless's conduct with respect to the IP-Cast mark in New Jersey does not alone permit this Court to exercise personal jurisdiction over Seamless.

### B. COMMUNICATIONS DIRECTED TO NEW JERSEY

LG asserts that Seamless's communications to New Jersey provide a basis for an assertion of personal jurisdiction. Specifically, LG contends that in a previously-filed action concerning the same trademark (i.e., the Oklahoma action discussed in Section I.A, supra) Seamless served LG in New Jersey, at its headquarters location. This correspondence to LG in New Jersey does not establish personal jurisdiction.

The fact that Seamless contacted LG in LG's home state of New Jersey to provide notice of litigation does not provide a basis for personal jurisdiction in this forum. See, e.g., Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement."); see also Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1339 (Fed. Cir. 2008) (finding no personal jurisdiction over a defendant where the

defendant had initiated actions to enforce intellectual property rights in other jurisdictions—but not in the jurisdiction in which the defendant was now being hauled into Court); Juniper Networks, Inc. v. SSL Servs., 2009 U.S. Dist. LEXIS 112399, at *11-12 (N.D. Cal. Nov. 13, 2009) ("Tellingly, [Plaintiff] cites no authority to support its novel argument that the act of filing a lawsuit against an alleged California resident—in a Texas district court—is sufficient to make a prima facie showing that it has purposefully availed "itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (citing Avocent, 552 F.3d at 1333); see also Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC, 2010 U.S. Dist. LEXIS 47367, at *8-9 (N.D. Tx., May 12, 2010) (finding that a defendant's enforcement actions in other jurisdictions did not provide a basis for the exercise of specific jurisdiction over defendant simply because the plaintiff operated in forum state of the current action).[4]

Seamless's service of LG in New Jersey in a previously-filed action (in Oklahoma) does not establish a basis for personal jurisdiction over Seamless in New Jersey.

### C. PRODUCT DEMONSTRATION(S) FROM WITHIN NEW JERSEY

LG next argues that personal jurisdiction is proper because Seamless conducted product advertising from within New Jersey. Specifically, LG asserts that "[Seamless] or its agent(s) was physically present within New Jersey on January 17, 2009 to use [Seamless]'s product and service

---

[4] Perhaps if Seamless engaged in additional conduct related to the enforcement of its intellectual property rights in this State, then it could properly be subject to New Jersey jurisdiction based on such contacts. Pro Sports, 639 F. Supp. 2d at 481 (internal citations omitted). Examples of such additional conduct might include "initiating judicial or extra-judicial patent enforcement **within the forum**, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." Id. (emphasis added). Here, Seamless has conducted no such additional activities in New Jersey.

bearing the trademark that is the subject of this litigation." Pl. Br. at 8. On this occasion, an unidentified individual filmed a video while in New Jersey, and this recording was available for viewing on Seamless's website. LG asserts, based on this event, that "Seamless conducted a live product demonstration of its services within New Jersey." Id. The Court disagrees for a number of reasons.

As an initial matter, the Court is hesitant to characterize the video as a product demonstration—it could very well be the case that the individual was simply using Seamless's product in New Jersey. The use of Seamless's mark in New Jersey does not automatically establish a basis for personal jurisdiction in the State. See III.B, supra.

Moreover, even if the clip was in fact recorded by Seamless, similar video clips were filmed in various locations from New York to the District of Columbia. To accept LG's argument that a brief, isolated recording in New Jersey provides a basis for jurisdiction over Seamless would amount to a finding that this action could be maintained in any location where such a recording occurred. Such a result would be especially inappropriate here, where the recording was produced informally, e.g., from an individual's phone, while traveling through New Jersey. This tenuous contact with New Jersey does not demonstrate a purposeful availment of the laws and jurisdiction of the State.[5] Also of critical importance, there is no indication that the video was intended to be viewed by New Jersey residents in particular.

---

[5] Additionally, there is no evidence before the Court establishing who the individual filming was (i.e., whether he was even an agent of Seamless). Even assuming that the person recording the video was an employe/agent of Seamless, this individual's fleeting contact with New Jersey is insufficient to provide this Court with personal jurisdiction.

### D. Jurisdiction Based on Commercial Contacts Through a Website

LG asserts that jurisdiction in New Jersey is appropriate based upon Seamless's sales/business activity conducted through its website. The Court finds this argument to be LG's most persuasive.

To determine if a website provides a basis for personal jurisdiction, courts must assess "the nature and quality of commercial activity that the defendant conducts over the Internet." Spuglio v. Cabaret Lounge, 344 Fed. App'x 724, 725 (3d Cir. 2009) (internal quotation marks and citations omitted), by determining where the website's level of commercial activity falls on the sliding scale set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997); Spuglio, 344 Fed. App'x at 725. The Third Circuit has explained:

> On one end of the sliding scale are defendants who actively do business over the Internet. An example would be one who 'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.' For such 'active' defendants, the exercise of personal jurisdiction is proper. On the other end of the scale are those who merely make information available on the Internet. The exercise of personal jurisdiction over such 'passive' defendants is improper.

Id. (quoting Zippo, 952 F.Supp. at 1124). Regarding "the cases that fall in the middle, the proper exercise of personal jurisdiction 'is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" Id. at 725 n.2 (quoting Zippo, 952 F.Supp. at 1124).

"[M]iddle ground websites that are sufficiently interactive, make the exercise of jurisdiction proper because they involve an entity that intentionally reaches beyond its boundaries to conduct business with foreign residents." Food Scis. Corp. v. Nagler, 2010 U.S. Dist. LEXIS 27236, at *6-7 (D.N.J. March 22, 2010) (citing Zippo, 952 F.Supp. at 1124 and Burger King, 471 U.S. at 475

(1985)). As another court in this District noted, a website is sufficiently "interactive" such that it may form a basis for jurisdiction where the site permits or requires "users [to] exchange information with the host computer . . . ." Happy Chef, Inc. v. Dauben, 2008 U.S. Dist. LEXIS 65263 (D.N.J. Aug. 25, 2008) (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997)). For example, a Court might consider whether purchases can be made directly from the website and/or whether visitors can, or are asked to, submit their personal information through the website. See id. (citing Cybersell, 130 F.3d at 418-19). Ultimately, the question is whether "defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." Toys "R" Us, 318 F.3d at 454; see Zippo, 952 F.Supp. at 1126-27 (finding jurisdiction in Pennsylvania where defendant "repeatedly and consciously chose to process Pennsylvania residents applications and to assign them passwords, knowing that the contacts would result in business relationships with Pennsylvania customers.").

Accordingly, here, this Court must assess whether Seamless's website targets New Jersey, and whether Seamless knowingly interacts with New Jersey residents via its website. Food Scis., 2010 U.S. Dist. LEXIS 27236, at *8; see Toys "R" Us, 318 F.3d at 454. Moreover, in completing its personal jurisdiction assessment, this Court obviously must also consider any significant non-website contacts Seamless has with New Jersey: all of Seamless's contacts with this forum (internet-based or otherwise) must be aggregated to determine if it has sufficient contacts with the State. See Food Scis., 2010 U.S. Dist. LEXIS 27236, at *8

In this case, Defendant Seamless's website (http://seamlessinteractive.com) appears to fall somewhere in the "middle ground" described above. There is no information before this Court

indicating that Seamless and its customers initiate business relationships over the internet (e.g., form contracts, etc.). On the other hand, the website does not merely present information, as the site prominently displays a "Client Portal"—through which existing customers can presumably log in. Upon logging in, the user (i.e., a client) may be able to exchange significant amounts of information with defendant Seamless and vice versa.

The record before this Court does not provide a sufficient basis for a determination as to the level of interactivity between New Jersey customers and Seamless's website. As noted above, there appears to be a mechanism for exchanging information between clients and Seamless on Seamless's website. Although the Court is speculating, perhaps logging in to the "Client Portal" allows the client to place additional orders, or permits Seamless to inform clients of updates to their accounts. These are the type of facts that could prove highly relevant to this Court's personal jurisdiction analysis. Additionally, and also of critical importance, this Court has no information as to whether any of Seamless's customer/website-users are actually located in New Jersey. Without such facts, the Court cannot determine whether Seamless is subject to jurisdiction in New Jersey by virtue of its website-based contacts with New Jersey residents.[6]

---

[6] At this time, a full analysis as to whether the assertion of jurisdiction would offend "traditional notions of fair play and substantial justice" is unnecessary. Nonetheless, the Court notes that if personal jurisdiction is ultimately determined to proper based upon the internet commercial activity test, the Court would most likely exercise jurisdiction, as

> [t]here can be no question that [this forum] has a strong interest in adjudicating disputes involving the alleged infringement of trademarks owned by resident corporations. We must also give due regard to the Plaintiff's choice to seek relief in [this forum]. These concerns outweigh the burden created by forcing the Defendant to defend the suit in [this forum], especially when [Defendant] consciously chose to conduct business in [this forum], pursuing profits from the actions that are now in question. The Due Process Clause is not a 'territorial shield to interstate obligations that have been voluntarily assumed.' Burger King, 471 U.S. at 474, 105 S.Ct. at 2183.

Food Scis., 2010 U.S. Dist. LEXIS 27236, at *13 (citing Zippo, 952 F.Supp. at 1127).

Although the evidence of record is currently insufficient to convince this Court that an assertion of personal jurisdiction is proper, LG has alleged "with reasonable particularity" the possibility that minimum contacts exist between Seamless and New Jersey. Where "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." Toys "R" Us, 318 F.3d at 456 (citing Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)); see Ajax Enters. v. Szymoniak Law Firm, P.A., 2008 U.S. Dist. LEXIS 29582, at *2-3 (D.N.J. Apr. 10, 2008); Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co., 2007 U.S. Dist. LEXIS 87925 (D.N.J. Nov. 30, 2007) (denying motion to dismiss for lack of personal jurisdiction pending the submission of additional evidence and further briefing on the issue). Accordingly, this Court finds limited discovery, related exclusively to the issue of personal jurisdiction over Seamless, is proper here.

### IV. **CONCLUSION**

For the reasons stated above, Seamless's motion to dismiss for lack of personal jurisdiction is **denied without prejudice**, and limited jurisdictional discovery will be permitted.

    S/ Dennis M. Cavanaugh
    Dennis M. Cavanaugh, U.S.D.J.

Date:        August __2__, 2010
Orig.:        Clerk
cc:          All Counsel of Record
            Hon. Joseph A. Dickson, U.S.M.J.
            File